UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DI

UNITED STATES OF AMERICA,

Plaintiff,

v.
D-1  MARK JOVETT APSEY,
a.k.a. "Jay Apsey,"
a.k.a. "Jay,"
D-2  MARTIN GRENIER.
a.k.a. "Joe Smith,"
a.k.a. "Eric LaChance,"
a.k.a. "Martin,"

Defendants.
_____/

Case:2:12-cr-20545
Judge: Roberts, Victoria A.
MJ: Michelson, Laurie J.
Filed: 08-15-2012 At 04:25 PM
INDI USA V SEALED MATTER (EB)

VIOL: 18 U.S.C. § 1956(h):
Conspiracy to Launder Monetary Instruments

18 U.S.C. § 1956(a)(2)(A):
Cross-Border Money Laundering

18 U.S.C. § 1952(a):
Interstate Transportation in Aid of Racketeering

## INDICTMENT

THE GRAND JURY CHARGES:

### COUNT ONE
Conspiracy to Launder Monetary Instruments
(18 U.S.C. §§ 1956(h), 1956(a)(1)(A)(i), 1956(a)(1)(B)(i)-(ii), 1956(a)(3))

D-1  MARK JOVETT APSEY, a.k.a. "Jay Apsey," a.k.a "Jay"
D-2  MARTIN GRENIER, a.k.a. "Joe Smith," a.k.a. "Eric LaChance," a.k.a "Martin"

In or about March 2009, and continuing through the date of this Indictment, in the Eastern District of Michigan and elsewhere, MARK JOVETT APSEY, MARTIN GRENIER, and others known and unknown to the Grand Jury, knowing that the property involved represented the proceeds of some form of unlawful activity, that is the proceeds of activity which constitutes a felony under State, Federal, or Foreign law, to wit: the possession with the intent to distribute and distribution of controlled substances, a felony under Title 21, United States Code, Section

841; bankruptcy fraud, a felony under Title 18, United States Code, Sections 152, 157; tax evasion or tax fraud, felonies under Title 26, United States Code, Sections 7201-7207; and false pretenses with intent to defraud, a felony under Michigan Penal Code, Section 750.218; did knowingly, intentionally and unlawfully combine, conspire, confederate and agree with each other, and with others, both known and unknown to the Grand Jury, to conduct and/or cause to be conducted, financial transactions which involve the proceeds of said unlawful activity and property represented to be the proceeds of specified unlawful activity, and conducted or attempted to conduct a financial transaction involving property represented to be the proceeds of unlawful activity or property used to conduct or facilitate specified unlawful activity, with the intent to promote the carrying on of said unlawful activity, knowing that the transactions were designed, in whole or in part, to conceal and/or disguise the nature, location, source, ownership and control of the proceeds of specified unlawful activity and property believed to be the proceeds of specified unlawful activity, and to avoid transaction reporting requirements under State or Federal law, all in violation of Title 18, United States Code, Sections 1956(h), 1956(a)(1)(A)(i), 1956(a)(1)(B)(i)-(ii), and 1956(a)(3).

## MANNER, METHOD, and MEANS

1. As part of the conspiracy, on or about March 31, 2009, MARK JOVETT APSEY e-mailed a false document to an attorney entitled, "Secured Promissory Note," which was transmitted in an effort to establish a legitimate business purpose for a wire transfer of funds which MARK JOVETT APSEY caused to be deposited into the attorney's lawyer trust account.

2. As part of the conspiracy, on or about April 17, 2009, MARK JOVETT APSEY flew from Chicago, Illinois to Los Angeles, California with approximately Three Hundred Thousand Dollars ($300,000.00) in United States Currency.

3. As part of the conspiracy, on or about April 27-28, 2009, MARK JOVETT APSEY directed co-conspirator AT to fly from Detroit, Michigan to New York and pick up a suitcase containing Three Hundred Sixty-Five Thousand Four Hundred Forty Dollars ($365,440.00) in United States Currency on a New York City street corner from "Chuck," directed co-conspirator AT to return via commercial airline to Detroit, Michigan with the currency, drafted a false promissory note regarding the source and purpose for the currency, and caused co-conspirator AT to provide the false promissory note to federal law enforcement agents. The $365,440.00 in currency was seized by agents of the United States Drug Enforcement Administration, Detroit Field Division, at the Detroit Metropolitan Airport in Romulus, Michigan.

4. As part of the conspiracy, on or about May 1, 2009 at approximately 12:52 p.m., MARK JOVETT APSEY made material false statements to a federal law enforcement agent regarding the source and purpose for the $365,440.00 in U.S. Currency.

5. As part of the conspiracy, on or about May 1, 2009 at approximately 5:04 p.m., MARK JOVETT APSEY e-mailed MARTIN GRENIER, stating, "dude the [f**k] up was packaging [. . .]," to which MARTIN GRENIER replied at approximately 5:05 p.m., "[a]greed on that but Adam didn't think much also[. . .]," to which MARK JOVETT APSEY replied at approximately 5:19 p.m., "no doubt. cant send a boy to do a mans job."

6. As part of the conspiracy, on or about May 6-7, 2009, MARK JOVETT APSEY purchased two cellular telephones, kept one of the phones, provided the other phone to co-conspirator NA, and instructed co-conspirator NA to turn on and use the phone only at his (APSEY's) direction; those two cellular telephones were subsequently utilized as a method of communication by APSEY and other co-conspirators to assist with the transportation of currency in furtherance of the money laundering activity.

7. As part of the conspiracy, on or about May 27, 2009, MARK JOVETT APSEY caused Five Hundred Thousand Dollars ($500,000.00) in U.S. currency funds to be transferred via wire transaction to a lawyer trust account in Illinois, specifically Chase Bank Account Number XXXXX2563, from a place outside of the United States, namely Account Number XXX8131 in the name of IT Data Marketing, Inc. at Union Bancaire Privee, Nassau, Bahamas, resulting in the withdrawal of $500,000.00 in cash from Chase Bank on or about May 29, 2009.

8. As part of the conspiracy, on or about May 28-29, 2009, MARTIN GRENIER directed co-conspirators NM and NA to meet at a location in Indiana between Detroit, Michigan and Chicago, Illinois for the purpose of delivering and receiving approximately Two Hundred Thousand Dollars ($200,000.00) in U.S. Currency.

9. As part of the conspiracy, on or about June 2, 2009, MARK JOVETT APSEY directed co-conspirator NM to fly from Gary, Indiana to Los Angeles, California via a charter flight to transport approximately Six Hundred Twenty-Nine Thousand Dollars ($629,000.00) in U.S. Currency, paid for the charter flight, and further instructed co-conspirator NM to delivery the currency in Los Angeles to "Joe."

10. As part of the conspiracy, in or about June 2009, MARTIN GRENIER contacted a Canadian attorney in an effort to create false documentation regarding the source and purpose of the $365,440.00 in U.S. Currency which had been seized by DEA Detroit on or about April 28, 2009; the false documents proposed a wholesale purchase of costume jewelry between CNP International and a New York jewelry designer.

11. As part of the conspiracy, on or about June 5, 2009, MARK JOVETT APSEY and MARTIN GRENIER instructed co-conspirator NM to transport cashier's checks to Toronto, Ontario, Canada, specifically MARK JOVETT APSEY provided co-conspirator NM with a Cashier's Check in the amount of Seventy Thousand Dollars ($70,000.00) and instructed co-conspirator NM to drive the cashier's check to Toronto, Ontario, Canada, and MARTIN GRENIER instructed co-conspirator NM to purchase a Cashier's Check in the amount of Ninety-Thousand Dollars ($90,000.00) in Detroit and then transport the cashier's check to Toronto, Ontario, Canada.

12. As part of the conspiracy, on or about June 8, 2009, MARK JOVETT APSEY purchased a currency counting machine from a currency handling machine manufacturer, arranged to have the currency counting machine available for pickup at the Los Angeles International Airport, and instructed co-conspirator NM to pick up the currency counting machine at the Los Angeles airport, then call "Joe."

13. As part of the conspiracy, on or about June 8, 2009, MARK JOVETT APSEY wire transferred $13,624.45 from a bank account to Automotive Air Charter to pay for a charter air flight for co-conspirator NM to fly to Los Angeles, California with approximately Five Hundred Eighty-Two Thousand Dollars ($582,000.00) in U.S. Currency.

14. As part of the conspiracy, on or about June 8, 2009, MARK JOVETT APSEY and MARTIN GRENIER directed co-conspirator NM to transport approximately Five Hundred Eighty-Two Thousand Dollars ($582,000.00) in U.S. Currency via charter air flight from Wheeling, Illinois to Los Angeles, California.

15. As part of the conspiracy, on or about June 8, 2009, MARTIN GRENIER informed co-conspirator NM, via text message, that Los Angeles contact "Joe" was not available and instructed co-conspirator NM to instead call "Tom."

16. As part of the conspiracy, on or about June 12, 2009, MARTIN GRENIER directed co-conspirator NM to pick up approximately Two Hundred Fifty Thousand Dollars ($250,000.00) in U.S. Currency in Boston from "Tommy," provided co-conspirator NM with the contact phone number for "Tommy," and caused co-conspirator NM to pick up approximately $250,000.00 in cash from two Asian males in Lowell Massachusetts on or about June 13, 2009.

17. As part of the conspiracy, on or about June 14, 2009, MARK JOVETT APSEY directed co-conspirator NM to deliver approximately Two Hundred Fifty Thousand Dollars ($250,000.00) in U.S. Currency to a residence in Bloomfield Hills, Michigan.

18. As part of the conspiracy, on or about June 14, 2009, MARK JOVETT APSEY directed co-conspirator NA to transport approximately Seven Hundred Thousand Dollars ($700,000.00) in U.S. Currency from the Eastern District of Michigan to Los Angeles, California.

19. As part of the conspiracy, on or about June 25, 2009, MARK JOVETT APSEY utilized a hotel room in Atlanta, Georgia where he counted approximately Six Hundred Eighty-Five Thousand Nine Hundred Nineteen Dollars ($685,919.00) in U.S. Currency.

20. As part of the conspiracy, on or about June 26, 2009, MARTIN GRENIER directed two co-conspirators, NM and MH, to deliver U.S. Currency to Los Angeles; the two co-conspirators, NM and MH, drove approximately $685,919.00 in cash from Atlanta, Georgia to Los Angeles, California.

21. As part of the conspiracy, on or about June 29, 2009, MARTIN GRENIER instructed co-conspirator NM to pick up cash from "Roberto" in Boston; co-conspirator NM picked up approximately Two Hundred Ten Thousand Dollars ($210,000.00) in U.S. Currency from "Roberto" at a residence in South Easton, Massachusetts, and, on or about June 30, 2009, co-conspirator NM accepted delivery at his Boston hotel room of approximately Two Hundred Twenty-One Thousand Dollars ($221,000.00) in U.S. Currency from "Ryan."

22. As part of the conspiracy, on or about June 30, 2009, MARTIN GRENIER directed co-conspirator NM to travel to Kingston, New York to pick up cash; co-conspirator NM collected approximately Six Hundred Eighteen Thousand Dollars ($618,000.00) in U.S. Currency in a parking lot in Kingston, New York, and co-conspirators NM and MH drove from Kingston, New York to Chicago, Illinois with approximately One Million Forty-

Nine Thousand Dollars in U.S. Currency (comprised of the approximately $618,000.00 in cash from the parking lot in Kingston, New York, the approximately $210,000.00 obtained from "Roberto" in Boston, and the approximately $221,000.00 delivered to the Boston hotel room by "Ryan").

23. As part of the conspiracy, on or about July 1, 2009, MARK JOVETT APSEY paid for a charter air flight for co-conspirator NM who then traveled and transported approximately $1,049,000.00 in cash from Chicago to Van Nuys, California.

24. As part of the conspiracy, on or about July 1, 2009, MARTIN GRENIER instructed co-conspirator NM to deliver approximately Seven Hundred Fifty Thousand Dollars ($750,000.00) in U.S. Currency to "LA Tommy" and informed co-conspirator NM that approximately Three Hundred Fifty Thousand Dollars ($350,000.00) in U.S. Currency would be picked up from him by a different person in Los Angeles.

25. On or about July 1, 2009, "LA Tommy" came to the Los Angeles hotel room of co-conspirator NM to pick up the approximately $750,000.00 in cash. "LA Tommy" left the hotel room of co-conspirator NM carrying part of the currency out of the room. "LA Tommy" and co-conspirator NM were arrested by officers of the Anaheim, California Police Department. A total of One Million Forty-Nine Thousand Three Hundred Fifty-Four Dollars in U.S. Currency was seized by law enforcement agents. The cellular telephone of co-conspirator NM was also seized by law enforcement agents.

26. As part of the conspiracy, on or about July 2-3, 2009, MARTIN GRENIER attempted to contact co-conspirators NM and JC via cellular telephone following the arrest of co-conspirator NM in California.

27. As part of the conspiracy, in or about July 2009, MARK JOVETT APSEY contacted an attorney to represent co-conspirator NM for purposes of submitting a claim to the $1,049,354.00 in U.S. Currency that had been seized by law enforcement in California.

28. As part of the conspiracy, on or about August 28, 2009, MARK JOVETT APSEY submitted a claim to the United State Drug Enforcement Administration, on behalf of CNP International, asserting an ownership interest in the $1,049,354.00 seized in California.

29. As part of the conspiracy, on or about October 29, 2009, MARK JOVETT APSEY created false documents related to a purported purchase of jewelry in an attempt to fabricate a legitimate business purpose for the $365,440.00 in U.S. Currency which was seized by DEA Detroit on or about April 28, 2009.

30. As part of the conspiracy, on or about December 10, 2009, during the execution of a federal search warrant of his residence in Bloomfield Hills, Michigan, MARK JOVETT APSEY made material false statements to federal agents regarding the source and origin of the $1,049,354.00 seized in California in July 2009, and regarding the source of the approximately $686,000.00 which was in his possession at the hotel room in Atlanta, Georgia in June 2009.

31. As part of the conspiracy, on or about December 11, 2009 (the day after the search warrant had been executed at his residence), MARK JOVETT APSEY flew from Detroit, Michigan to Houston, Texas and met with a purported member of a Drug Trafficking Organization where APSEY attempted to pick up approximately Two Hundred Fifty

Thousand Dollars ($250,000.00) in currency in order to launder the funds for the Drug Trafficking Organization.

32.  As part of the conspiracy, in or about January 2010 in the Eastern District of Michigan, MARK JOVETT APSEY provided co-conspirator TG with a duffel bag containing in excess of Four Hundred Thousand Dollars ($400,000.00) in U.S. Currency, a portion of which was used to purchase a check cashing business in Detroit.

33.  As part of the conspiracy, on or about February 19, 2010, MARK JOVETT APSEY caused the purchase of bank bags for the purpose of transporting bulk currency.

34.  As part of the conspiracy, between February 19, 2010 and April 9, 2010, said dates being approximate, MARK JOVETT APSEY caused approximately One Million One Hundred Twenty-Four Dollars ($1,124,000.00) in United States Currency to be shipped to Scottsdale, Arizona and Los Angeles, California where the currency packages were delivered to and accepted by co-conspirator BS, who then provided the cash to individuals known and unknown to the Grand Jury for further distribution to Drug Trafficking Organizations:

   a.  on or about February 19, 2010, MARK JOVETT APSEY caused the shipment of approximately Seven Hundred Twenty-Four Thousand Dollars ($724,000.00) in U.S. Currency from the check cashing store in Detroit via armored car service and Federal Express to Scottsdale, Arizona.

   b.  on or about March 25, 2010, MARK JOVETT APSEY caused the shipment of approximately Two Hundred Thousand Dollars ($200,000.00) in U.S. Currency

from the check cashing store in Detroit via armored car service and Federal Express to Los Angeles, California.

c. on or about April 9, 2010, MARK JOVETT APSEY caused the shipment of approximately Two Hundred Thousand Dollars ($200,000.00) in U.S. Currency from the check cashing store in Detroit via armored car service and Federal Express to Los Angeles, California.

All in Violation of Title 18, United States Code, Sections §§ 1956(h), 1956(a)(1)(A)(i), 1956(a)(1)(B)(i)-(ii), and 1956(a)(3).

## COUNT TWO

Cross-Border Money Laundering
18 U.S.C. §§ 1956(a)(2)(A)

D-1   MARK JOVETT APSEY, a.k.a. "Jay Apsey," a.k.a "Jay"

The allegations contained in Count One of this Indictment are hereby incorporated by reference. On or about March 25, 2009, MARK JOVETT APSEY transferred or caused to be transferred approximately Four Hundred Eighty-Eight Thousand Dollars ($488,000.00) in U.S. currency funds to a place in the United States, namely the IOLTA account of an attorney in the Eastern District of Michigan, specifically Key Bank Account Number XXXXXXXX5880, from a place outside of the United States, namely Account Number XXX8131 in the name of IT Data Marketing, Inc. at Union Bancaire Privee, Nassau, Bahamas, with the intent to promote the carrying on of specified unlawful activity, all in violation of Title 18, United States Code, Section 1956(a)(2)(A).

## COUNT THREE

Cross-Border Money Laundering
18 U.S.C. §§ 1956(a)(2)(A)

D-1   MARK JOVETT APSEY, a.k.a. "Jay Apsey," a.k.a "Jay"

The allegations contained in Counts One and Two of this Indictment are hereby incorporated by reference. On or about April 15, 2009, MARK JOVETT APSEY transferred or caused to be transferred approximately Four Hundred Thousand Dollars ($400,000.00) in U.S. currency funds to a place in the United States, namely the IOLTA account of an attorney in the Eastern District of Michigan, specifically Key Bank Account Number XXXXXXXX5880, from a place outside of the United States, namely Account Number XXX8131 in the name of IT Data Marketing, Inc. at Union Bancaire Privee, Nassau, Bahamas, with the intent to promote the carrying on of specified unlawful activity, all in violation of Title 18, United States Code, Section 1956(a)(2)(A).

## COUNT FOUR

Interstate and Foreign Travel or Transportation in Aid of Racketeering Enterprises,
Aiding and Abetting
18 U.S.C. §§ 1952(a)(1), 1952(a)(3), 2

D-2   MARTIN GRENIER, a.k.a "Joe Smith," a.k.a. "Eric LaChance," a.k.a. "Martin"

The allegations contained in Counts One, Two, and Three of this Indictment are hereby incorporated by reference. On or about May 29, 2009, MARTIN GRENIER, and others known and unknown to the Grand Jury, did knowingly travel, or aid and abet others in traveling, in interstate or foreign commerce by causing NA to transport approximately Two Hundred Thousand Dollars ($200,000.00) in United States Currency from the Eastern District of Michigan

to a restaurant in Merrillville, Indiana, with the intent to distribute the proceeds of unlawful activity and with the intent to otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of unlawful activity, all in violation of Title 18, United States Code, Sections 1952(a)(1), 1952(a)(3), and 2.

## COUNT FIVE

Interstate and Foreign Travel or Transportation in Aid of Racketeering Enterprises,
Aiding and Abetting
18 U.S.C. §§ 1952(a)(1), 1952(a)(3), 2

D-1   MARK JOVETT APSEY, a.k.a. "Jay Apsey," a.k.a "Jay"

The allegations contained in Counts One, Two, Three, and Four of this Indictment are hereby incorporated by reference. On or about February 19, 2010, MARK JOVETT APSEY, and others known and unknown to the Grand Jury, did knowingly use the mail or a facility in interstate or foreign commerce, and aid and abet the same, by causing approximately Seven Hundred Twenty-Four Thousand Dollars ($724,000.00) in United States Currency to be collected by an armored car service from a check cashing business in Detroit and shipped via Federal Express to Scottsdale, Arizona, with the intent to distribute the proceeds of unlawful activity and with the intent to otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of unlawful activity, all in violation of Title 18, United States Code, Sections 1952(a)(1), 1952(a)(3), and 2.

## CRIMINAL FORFEITURE ALLEGATIONS
18 U.S.C. § 982(a)(1)
18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461

1. Upon conviction of one or more violations of Conspiracy to Launder Monetary Instruments or Money Laundering, in violation of Title 18, United States Code, Section 1956, as alleged in Counts One, Two, and Three of this Indictment, Defendants MARK JOVETT APSEY and MARTIN GRENIER shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), their right, title, and interest in any property, real or personal, involved in such offenses or any properties traceable to such property.

2. Upon conviction of one or more violations of Interstate Transportation in Aid of Racketeering, Aiding and Abetting, in violation of Title 18, United States Code, Sections 1952, 2, as alleged in Counts Four and Five of this Indictment, Defendants MARK JOVETT APSEY and MARTIN GRENIER shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) together with Title 28, United States Code, Section 2461(c), their right, title, and interest in any property, real or personal, which constitutes or is derived from proceeds traceable to such offenses.

3. Property subject to forfeiture to the United States pursuant to 18 U.S.C. § 982(a)(1), and 18 U.S.C. § 981(a)(1)(C) together with 28 U.S.C. § 2461(c), includes, but is not limited to the following:

Three Hundred Sixty-Five Thousand Four Hundred Forty Dollars ($365,440.00) in United States Currency, seized at the Detroit Metropolitan Airport on or about April 28, 2009 by agents of the United States Drug Enforcement Administration.

4. Substitute Assets: Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1)-(2), each defendant shall forfeit substitute property, up to the value of the properties identified for forfeiture, if, by any act or omission of the defendant, the properties identified for forfeiture cannot be located upon the exercise of due diligence; have been transferred or sold to, or deposited with, a third party; have been placed beyond the jurisdiction of the court; have been substantially diminished in value; or have been commingled with other property which cannot be divided without difficulty.

## CRIMINAL FORFEITURE MONEY JUDGMENT

Upon conviction of one or more of the violations of Title 18, United States Code, Sections 1952 or 1956, as alleged in Counts One through Five of this Indictment, Defendants MARK JOVETT APSEY and MARTIN GRENIER shall be ordered to pay a sum of money equal to Six Million Four Hundred Seventy-Seven Thousand Eight Hundred Fifty-Nine Dollars ($6,477,859.00) in United States Currency Funds, for which Defendants MARK JOVETT APSEY and MARTIN GRENIER are jointly and severally liable, representing the amount of proceeds obtained as a result of their offenses.

THIS IS A TRUE BILL.

s/Grand Jury Foreperson
Foreperson


BARBARA L. McQUADE
United States Attorney

/s/ Rita E. Foley
RITA ELIZABETH FOLEY
Assistant United States Attorney
2001 W. Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9520
rita.foley@usdoj.gov
Bar No. P-56361


/s/ Julie A. Beck
JULIE A. BECK
Assistant United States Attorney
2001 W. Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9717
julie.beck@usdoj.gov
Bar No. P-53291


Dated: August 15, 2012

| United States District Court<br>Eastern District of Michigan | Criminal Case C | Case: 2:12-cr-20545<br>Judge: Roberts, Victoria A.<br>MJ: Michelson, Laurie J.<br>Filed: 08-15-2012 At 04:25 PM<br>INDI USA V SEALED MATTER (EB) |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to ~

## Reassignment/Recusal Information

This matter was opened in the USAO prior to August 15, 2008   [ ]

| Companion Case Information | Companion Case Number: 09-CV-13564 |
|---|---|
| This may be a companion case based upon LCrR 57.10 (b)(4)¹: | Judge Assigned: BERNARD A. FRIEDMAN |
| ☒ Yes        ☐ No | AUSA's Initials: RF _ref_ |

Case Title: USA v. MARK JOVETT APSEY, ET. AL.,

County where offense occurred : OAKLAND COUNTY

Check One:        ☒ Felony        ☐ Misdemeanor        ☐ Petty

    X   Indictment/_____Information --- no prior complaint.
    ____Indictment/_____Information --- based upon prior complaint [Case number: ]
    ____Indictment/_____Information --- based upon LCrR 57.10 (d) *[Complete Superseding section below]*.

## Superseding Case Information

Superseding to Case No: _____   Judge: _____

☐ Original case was terminated; no additional charges or defendants.
☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

August 15, 2012
_____
Date

_Rita E. Foley_ (signature)
_____
RITA E. FOLEY
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226-3277
Phone:  (313) 226-9520
Fax: (313) 226-3265
E-Mail address:  rita.foley@usdoj.gov
Attorney Bar #:  (P56361)

¹ Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.

10/13/09